**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**IN RE: VICTOR WILLIAMS, DEBTOR**              **CASE NO.: 4:22-bk-12306**
                                                **CHAPTER 11**

**VICTOR WILLIAMS**                              **PLAINTIFF**

**V.**                    **AP NO.: 4:23-ap-01045**

**BAPTIST HEALTH**                              **DEFENDANT**
**DBA BAPTIST HEALTH MEDICAL CENTER**

<u>**MEMORANDUM OPINION**</u>

The plaintiff, Victor Williams ("Williams" or the "debtor"), filed his *Complaint to Avoid Preferential Transfer* ("Complaint") at docket entry 1; the defendant, Baptist Health d/b/a Baptist Health Medical Center ("Baptist"), filed its *Answer to Complaint to Avoid Preferential Transfer* ("Answer") at docket entry 5. Presently before the court is an *Amended Motion for Summary Judgment* ("Motion") and a *Brief in Support of Amended Motion for Summary Judgment* filed by Williams at docket entry 17; Baptist's *Opposition to Debtor's Motion for Summary Judgment and Cross-Motion for Summary Judgment* ("Cross-Motion") filed at docket entry 11; a *Brief in Support of Baptist Health's Opposition to Debtor's Motion for Summary Judgment and Cross-Motion for Summary Judgment* filed by Baptist at docket entry 12; *Baptist Health's Response to Debtor's Undisputed Material Facts and Separate Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment* filed by Baptist at docket entry 13; *Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment* filed by Williams at docket entry 18; *Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment* filed by Williams at docket entry 19; and *Baptist Health's Sur-Reply and Incorporated Memorandum of*

*Law in Opposition to Debtor's Motion for Summary Judgment* ("Sur-Reply") filed by Baptist at docket entry 31.

The court heard arguments of counsel on April 18, 2024, Williams appearing by and through his counsel, M. Randy Rice, Baptist appearing by and through its counsel, Allison R. Gladden. Thereafter, the court took this matter under advisement. For the reasons stated herein, the relief sought on the Motion is granted, and the relief sought in the Cross-Motion is denied. The court shall enter a separate judgment granting the relief sought in the Complaint.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (O). The following Memorandum Opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 7056.

## II. Findings of Fact

Both parties moved for summary judgment and concur that the court may render judgment in accordance with Federal Rule of Bankruptcy Procedure 7056.

### (1)    State Court Litigation

In support of his Motion, Williams filed his Debtor's Statement of Undisputed Facts as follows:

1. On or about August 23, 2022, [Williams] filed a chapter 11 bankruptcy proceeding in the United States Bankruptcy Court, Eastern District of Arkansas.
2. The defendant, [Baptist], is a private nonprofit corporation organized under the laws of the State of Arkansas, and doing business as "Baptist Health Medical Center."
3. This is a core proceeding over which the Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(I) and 1334 and 11 U.S.C. § 547.
4. Plaintiff owns and occupies as his homestead, real property located at 11 Hickory Pointe Cove, Little Rock, AR 72223. The real property described herein consist of a house located on a .36 acre tract of real property[.] [Williams] acquired

2

his interest [in] this property on December 9, 2004. The legal description of said real property is as follows:

> Lot 19, Hickory Pointe, an Addition to the City of Little Rock, Pulaski County, Arkansas.

5. On February 25, 2014, [Williams] filed a complaint in the Circuit Court of Pulaski County against [Baptist], 11 named individuals, the Arkansas State Medical Board, and unknown Doe defendants (Case No, 60CV-14-808, the "State Court Litigation").

6. The State Court Litigation was dismissed with prejudice on April 14, 2022, by the court's order granting Defendants' Fourth Motion for Summary Judgment.

7. On April 28, 2022, counsel for Baptist Health filed a motion seeking an award of its attorneys' fees and costs ("Fee Motion") incurred in its successful defense of [Williams's] claims[.] Williams filed an objection to the Fee Motion on May 12, 2022.

8. In the Fee Objection, Williams denied liability for Baptist Health's attorneys' fees, and asked the court to deny the Fee Motion. Cross-Motion Exhibit B, Pgs. 9-10.

9. On June 24, 2022, the Pulaski County Circuit Court granted the Fee Motion, and entered judgment in favor of Baptist Health for attorneys' fees in the amount of $465,240.00, and reasonable expenses in the amount of $23,860.66 ("Fee Award").

10. The Fee Award was entered in the records of the Pulaski County Clerk by means of electronic filing.

11. Upon entry of the Fee Award, it became a lien on Pulaski County real estate owned by Williams, pursuant to Ark. Code Ann.§ 16-65-1 17(a)(l)(A).

12. On July 11, 2022, Williams filed a Notice of Appeal from the Fee Award.

13. On August 23, 2022, Williams filed a petition for relief under chapter 11 of the United States Bankruptcy Code.

14. The Fee Award was affirmed by the Arkansas Supreme Court on June 30, 2023.

(Williams's Exhibit 7, ECF No. 17.)

Complementing and expanding the above, the following is gleaned from Williams's Motion and accompanying documents. In its Fee Motion, Baptist alleged the following:

24. When Plaintiff filed for Professional Staff Reappointment with [Baptist], he entered into an Agreement "as a condition to his application for, and acceptance of, staff appointment and clinical privileges," in which he agreed as follows:

> I agree that in the event I institute litigation against any [Baptist] facility and/or representative and the relief and/or damages I request in such litigation are not granted or substantially granted by final judgment of a court of competent jurisdiction, then I will reimburse the [Baptist] facility and all representatives who are defendants in such action for reasonable attorney's fees and other reasonable expenses incurred by them in the defense of such litigation.

3

25.  In the Agreement for his Professional Staff Reappointment, [Williams] further agreed to be bound by the [Baptist] staff bylaws.  (See Application for Professional Staff Reappointment, Ex. 2).  The Bylaws of the Professional Staff at the time of Plaintiffs Application for Reappointment provided, in relevant part:

> 14.9.1  TERMS OF COVENANT
> Each Applicant or Practitioner covenants and agrees that:
>
> 14.9.1.1     if he sued any Representative and/or the Hospital, and
>
> 14.9.1.2     the relief and/or damages requested by him in such suit are not granted or substantially granted by final judgment, then he shall promptly reimburse the Hospital and all Representatives who are defendants in such suit for their reasonable attorneys' fees and other reasonable expenses incurred in defense of such suit.

(Williams's Exhibit 4, at 7-8, ECF No. 17.)

In the Fee Award, the Circuit Court of Pulaski County determined per *Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990) and *South Beach Beverage Company, Inc. v. Harris Brands, Inc.*, 355 Ark. 347, 138 S.W.3d 102 (2003) the reasonableness of the fees requested, awarded fees and costs, and stated in pertinent part:

> The contractual documents executed by the parties specifically state that [Williams] will reimburse [Baptist] for "reasonable attorney's fees and other reasonable expenses incurred by them" in the event [Williams] was unsuccessful in litigation brought against [Baptist].  The court has, therefore, not applied the usual "court costs" analysis to the expenses submitted by [Baptist] but has instead applied the contractual standard agreed to by and between the parties.

(Williams's Exhibit 5, n.1, ECF No. 17.)

Baptist did not deny but amplified Williams's facts by submitting its own Statement of Undisputed Facts as follows:

1.  On February 25, 2014, [Williams] filed a complaint in the Circuit Court of Pulaski County against [Baptist], 11 named individuals, the Arkansas State Medical

4

Board, and unknown Doe defendants (Case No, 60CV-14-808, the "State Court Litigation"). Cross-Motion Exhibit A, SC Docket at Pg. 1.

2. The State Court Litigation was dismissed with prejudice on April 14, 2022, by the court's order granting Defendants' Fourth Motion for Summary Judgment. Cross-Motion Exhibit A (SC Docket) at Pg. 22; Plaintiffs Exhibit 3.

3. On April 28, 2022, counsel for [Baptist] filed a motion seeking an award of its attorneys' fees and costs incurred in its successful defense of Plaintiffs claims ("Fee Motion"). Cross-Motion Exhibit A, Pg. 22; Plaintiff's Exhibit 4.

4. Williams filed an objection to the Fee Motion on May 12, 2022 ("Fee Objection"). Cross-Motion Exhibit A, Pg. 22; Cross-Motion Exhibit B.

5. In the Fee Objection, Williams denied liability for [Baptist's] attorneys' fees, and asked the court to deny the Fee Motion. Cross-Motion Exhibit B, Pgs. 9-10.

6. On June 24, 2022, the Pulaski County Circuit Court granted the Fee Motion, and entered judgment in favor of [Baptist] for attorneys' fees in the amount of $465,240.00, and reasonable expenses in the amount of $23,860.66 ("Fee Award"). Cross-Motion Exhibit A, Pg. 23; Plaintiff's Exhibit 5.

7. The Fee Award was entered in the records of the Pulaski County Clerk by means of electronic filing.

8. Upon entry of the Fee Award, it became a lien on Pulaski County real estate owned by Williams, pursuant to Ark. Code Ann. § 16-65-l1 7(a)(l)(A).

9. On July 11, 2022, Williams filed a Notice of Appeal from the Fee Award. Plaintiff's Exhibit 5, Pg. 1.

10. On August 23, 2022, Williams filed a petition for relief under chapter 11 of the United States Bankruptcy Code. [BK Doc. 1].

11. The Fee Award was affirmed by the Arkansas Supreme Court on June 30, 2023. Cross-Motion Exhibit D.

(*Baptist's Response to Debtor's Undisputed Material Facts and Separate Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment*, at 3-4, ECF No. 13.)

Williams appealed the circuit court's Fee Award. The Supreme Court of Arkansas in its opinion delivered June 8, 2023, upheld the lower court's decision, stating in pertinent part:

[Williams] next argues that [Baptist was] not entitled to attorneys' fees under the agreement. [Williams] argues that [Baptist] failed to comply with medical-staff bylaws while terminating his medical-staff membership and surgical privileges, thus negating his liability for attorneys' fees under the agreement.

But in *Williams I*, we rejected the argument that [Baptist] failed to follow its bylaws. "[W]e agree with the circuit court that the actions taken by [Baptist] appellees with respect to [Williams's] administrative-review proceedings substantially complied with [Baptist's] bylaws and professional-staff rules." *Williams* [*v. Baptist Health*], 2020 Ark. 150, at 19, 598 S.W.3d [487,] 500 [("*Williams I*")]. This holding has become law of the case. It has preclusive effect

5

both upon the circuit court on remand and upon an appellate court on subsequent review. *See Clinical Study Centers, Inc. v. Boellner*, 2012 Ark. 266, at 4, 411 S.W.3d 695, 698. We cannot revisit this ruling now.

(Baptist's Exhibit D, at 4, ECF No. 11.)

(2)    Effect of Lien

Upon filing, the Fee Award became a lien on all real property owned by the debtor in Pulaski County, Arkansas, including his homestead. Williams posits that the imposition of the lien is an avoidable preference under the Bankruptcy Code. Typically, this would constitute a moot point as a debtor can remove an involuntary lien that impairs an exemption pursuant to section 522(f). That section, however, is unavailing to Williams in this instance because his property consists of .36 acres which exceeds the statutory urban homestead of .25 acres. Accordingly, there is nonexempt equity available to creditors in the property exceeding the voluntary first lien. Williams first calculates the total equity as follows:

> The value of the real property described above on June 24, 2022 (date of judgment) was $886,645.00. This is the same value of the property on August 23, 2022 (date that I filed bankruptcy). No improvements were made on the property between June 24, 2022 and August 23, 2022. The amount that I owed on the outstanding mortgage on this real property on June 24, 2022 (date of judgment) was $193,557.02. The amount that I owed on the outstanding mortgage on this real property on August 23, 2022 (date that I filed bankruptcy) was slightly less than $193,557.02.

(Williams's Exhibit 2, ECF No. 17.)

Williams calculates Baptist's equity in the property as follows:

> The real property owned by [Williams] consist of .36 acres. See Affidavit "Exhibit 2". The homestead exemption is limited to .25 acres pursuant to Arkansas Constitution Article 9 § 3 & 4. Therefore, the equivalent of .11 acre or 30.55% of that tract of realty is not exempt. The equity in [Williams's] homestead was equal to $693,087.98. This amount is determined by subtracting the value of the real property at the time of the judgment being granted on June 24, 2022 ($886,645.00) from the amount of the secured indebtedness thereon ($193,557.02). The value of the judgment lien is $211,738.38 ($693,087.98 X 30.55%). This value is transferred to the defendant only because of the judgment that it obtained on June

6

24, 2022. Had this judgment not been entered, defendant would possess no interest in the plaintiff's real property and no interest in the equity that existed in the plaintiff's real property.

(Williams's Exhibit B, at 4–5, ECF No. 17.)

Baptist does not agree with Williams's calculations.[1] At the hearing, the parties stipulated that regardless of the applicable or final numbers, Baptist would receive by virtue of its lien on the debtor's homestead more than it would in a Chapter 7 liquidation absent the lien.

## III. Analysis

Following extensive litigation and a favorable resolution, Baptist filed its Fee Motion, which the Pulaski County Circuit Court granted by its Fee Award entered June 24, 2022. The Fee Award immediately became a lien on Williams's Pulaski County real estate pursuant to Ark. Code Ann. § 16-65-117(a)(1)(A). Williams alleges that the resulting lien is a preferential transfer and thus avoidable.

Williams has the burden of proving that the transfer is a preference. *See Wells Fargo Home Mortg., Inc. v. Lindquist,* 592 F.3d 838, 842 (8th Cir. 2010). Accordingly, the transfer must be:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made-
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if-
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[1] Williams's calculations are inconsistent with this court's ruling in *In re Bradley,* 301 B.R. 546 (Bankr. W.D. Ark. 2003)*,* which is based upon a valuation and allocation of the property in an unimproved condition.

11 U.S.C. § 547(b).

The parties concede that a transfer was made to the benefit of Baptist, while the debtor was insolvent, within 90 days before the date of the filing of the petition, and that the lien enables Baptist to receive more than it would in a Chapter 7 liquidation absent the lien, though the parties dispute the exact amount. Thus, the sole remaining issue is whether the lien created by the Fee Award is indeed for an antecedent debt. Williams alleges in his Complaint that:

> The transfer was the result of and on account of an antecedent debt owed by [Williams] to [Baptist]. The [Fee Award] described above was for attorney fees of [Baptist] that were awarded to be paid by the Pulaski County Court for services that have been rendered over a seven (7) year period. The transfer resulted in [Baptist's] status being changed from an unsecured creditor to a secured creditor with its claim being secured by real property.

(Complaint, Aug. 23, 2023, ECF No. 1, at ¶ 8.)

Baptist affirmatively denies that the Fee Award was "'for or on account of an antecedent debt owed by the debtor before such transfer was made,' and therefore the lien created by the entry of the [Fee Award] is not avoidable as a preference under 11 USC § 547." (Answer, Sept. 18, 2023, ECF No. 5, at ¶¶ 8 and 10.)

Further, Baptist argues "[t]he creation of the debt owed to [Baptist] and the transfer [Williams] seeks to avoid occurred simultaneously on the entry of the Fee Award, and the automatic fixing of the Baptist Judgment Lien under Ark. Code Ann. § 16-65-117." (*Baptist's Brief in Support of Baptist Health's Opposition to Debtor's Motion for Summary Judgment and Cross-Motion for Summary Judgment*, at 5, ECF No. 12.)

Baptist additionally contends:

> At its threshold, [Williams's] analysis conflates an antecedent claim with an antecedent debt. At best, the right of a prevailing party to seek reimbursement for its attorney's fees and costs under Arkansas Rule of Civil Procedure 54[e] constitutes a "contingent" and "disputed" claim, under § 101(5). However, the

8

preference analysis does not stop there.  As cited by [Williams], the term "debt" means "liability on a claim." 11 U.S.C. § 101(12).  [Williams] offers no factual or legal justification for ignoring the undisputed fact that [Williams's] (vigorously contested) liability to [Baptist] was triggered only upon the entry of the Fee Award.

(*Baptist's Sur-Reply and Incorporated Memorandum of Law in Opposition to Debtor's Motion for Summary Judgment*, at 4, ECF No. 31.)

Finally, Baptist posits:

The phrase "owed by the debtor when the transfer was made" has been interpreted to mean that "at the time of the transfer, there was a recognizable 'claim' that was: . . . pre-existing, rather than one which arose simultaneously with the transfer." *In re Garcia*, 494 B.R. 799, 813 (Bankr. E.D.N.Y. 2013); *see also In re Armstrong*, 234 B.R. 899, 906 (Bankr. E.D. Ark. 1999).  The creation of the debt owed to [Baptist] and the transfer [Williams] seeks to avoid occurred simultaneously on the entry of the Fee Award, and the automatic fixing of the Baptist [l]ien under Ark. Code Ann. § 16-65-117.  The Baptist [l]ien is therefore not subject to avoidance as a preference.

(*Baptist's Brief in Support of Baptist Health's Opposition to Debtor's Motion for Summary Judgment and Cross-Motion for Summary Judgment*, at 5, ECF No. 12.)

Typically, the antecedent debt element is a given; judgments are basically for prior existing debts.  Simple physics separates the two.  But in this instance, Baptist argues that it was a "prevailing party" seeking reimbursement of its fees, which effort was a claim first and only a debt when awarded contemporaneously with the imposition by law of the judgment lien.  In Bankruptcy Code terms, Baptist suggests that it enjoyed only a claim, that is, an unliquidated, contingent, disputed "right to payment," until entry of the Fee Award which converted the claim to a debt, or "liability."  Thus, we have the odd circumstance where a creditor is arguing that it was not pursuing a debt but solely a claim that became a debt only upon entry of the Fee Award.

Both the claim and the debt, however, are antecedent to the entry of the Fee Award and lien transfer.  Claim and debt are inseparable.  The moment there is a claim or right to payment,

9

there is a debt, or liability.   The terms describe each side of any creditor/debtor relationship and simply do not exist without the other.  A claim is a right to payment.  Debt is the liability to make that payment.  The Bankruptcy Code is designed to manage financial distress, and from that prism creditors enjoy claims and debtors suffer debt.  The definition of a claim is subsumed within the definition of a debt, a recognition that for bankruptcy purposes debt and claims are administered "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).  Accordingly, whether fixed, disputed, contingent, liquidated, or unliquidated, Baptist most assuredly was pursuing a debt—or liability—from Williams when pursuing its claim—or right to payment.  The Fee Award merely concluded the dispute for purposes of liquidation and created a lien—a transfer—for purposes of collection for a debt owed by Williams before the transfer occurred.[2]

Although the terms debt and claim are often used interchangeably, the Bankruptcy Code defines each separately:

> (5) The term "claim" means—
>    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . .
>
> (12) The term "debt" means liability on a claim.

11 U.S.C. §§ 101(5)(A), 101(12).

The Bankruptcy Code broadly defines a claim to include known, contingent, unmatured, disputed, and unliquidated rights to payment for the specific purpose of identifying all prepetition claims for treatment and payment—whether through a plan or liquidation—followed by discharge

---

[2] The Bankruptcy Code's definition of a "transfer" includes "the creation of a lien."  11 U.S.C. § 101(54).

10

of the remaining balances.  Each claim contemplates debt for purposes of treatment, distribution, or discharge.  Baptist, both prejudgment and prebankruptcy, pursued a known choate *right to payment* based on a breach of contract with a coextensive *liability* that it was attempting to collect. Williams would not and did not pay voluntarily, so Baptist pursued him judicially seeking a judgment after which execution and garnishment could issue.  But the means of collection of a claim for a debt does not alter the characteristics of either—a legal right to payment for an amount, sometimes disputed and unliquidated, from someone liable.

Williams's liability to Baptist is grounded in contract.  When Williams asked for reappointment with Baptist, he entered into a written agreement and subjected himself to bylaws which contractually bound him to reimburse his employer in the event of unsuccessful litigation against them.  (Williams's Exhibit 4, at 7-8, ECF No. 17.).

Williams sued Baptist in the Circuit Court of Pulaski County, Arkansas, and, after years of acrimonious litigation, Baptist ultimately prevailed.  Thereafter, Baptist sought reimbursement of its attorneys' fees based upon the above contractual provisions which, by rule, could have been brought as a substantive cause of action within the Circuit Court litigation.  Specifically:

(e) Attorneys' Fees.

> (1) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

Ark. R. Civ. P. 54.

Baptist apparently did not seek fees as a separate breach of contract count in the Circuit Court litigation.  Rather, Baptist filed its Fee Motion after prevailing in that litigation—perhaps a more appropriate election given success as a condition precedent to liability.  The Circuit Court of

Pulaski County in its Fee Award specifically recognize the contractual basis of liability, stating as follows:

> The contractual documents executed by the parties specifically state that the plaintiff will reimburse the defendants for "reasonable attorney's fees and other reasonable expenses incurred by them" in the event the plaintiff was unsuccessful in litigation brought against the defendants. The court has, therefore, not applied the usual "court costs" analysis to the expenses submitted by defendants but has instead applied the contractual standard agreed to by and between the parties.

(Williams's Exhibit 5, n.1, ECF No. 17.)

Baptist's right to payment is based in contract and arose when it prevailed in the state court litigation. Baptist staked out the attendant liability in the Fee Motion. Williams's dispute of both did not change the nature of either; the Fee Award merely proved Baptist correct. Williams appealed the Fee Award. The Supreme Court of Arkansas in its opinion delivered June 8, 2023, recognized as law of the case its previous decision discarding Williams's effort to negate his liability for attorneys' fees based on the alleged failure of Baptist to comply with its bylaws. (Baptist's Exhibit D, at 4, ECF No. 11.)

Williams became contractually liable when he entered his employment and signed an agreement providing that he would reimburse Baptist for fees should he be an unsuccessful litigant against his employer. That contingent and remote liability became more probable when he sued his employer. The liability became contractually conclusive when he lost. Baptist pursued the claim, the right to payment, and the debt or liability, howsoever defined at or before, but no later than, the filing of the Fee Motion. The Fee Motion was based on a contractual right; it was not premised upon or solely within the discretion of the trial court as a prevailing party award. Baptist told the court there was a debt based on the reimbursement clauses in Williams's contract and its bylaws. The Fee Award conclusively rendered the debt enforceable and collectible, but a debt

12

nonetheless existed prior to the entry of the Fee Award and the imposition of the resulting and preferential lien.

This conclusion is consistent with *In re Bioplasty, Inc.* cited by Williams, which provides in pertinent part:

> In *Energy Co-op, Inc. v. SOCAP Int'l, Ltd.,* 832 F.2d 997 (7th Cir.1987), the Seventh Circuit Court of Appeals concluded that a transfer was made on account of an antecedent debt where the debtor transferred funds to the defendant "as compensation for" the debtor's prior repudiation of a contract. The defendant never sued the debtor for the repudiation, but rather advised the debtor that it would hold the debtor liable for the repudiation. The court found that the repudiation gave the defendant a right to pursue damages, and that such right constituted a "debt" as defined by the Bankruptcy Code, notwithstanding the fact that any ultimate recovery was contingent upon the defendant's successful pursuit of its remedy. *Energy Co-op,* 832 F.2d at 1002.
>
> Similarly, the transfer in the present case was made on account of Bioplasty's antecedent debt to the class action plaintiffs created by the alleged actions that gave rise to the District Court class action. The Bankruptcy Code defines a debt as a "liability on a claim," and defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §§ 101(12), 101(5)(A). The actions that gave rise to the class action suit gave the class action plaintiffs a right to pursue damages against Bioplasty. Even though any ultimate right to payment was disputed, contingent, unliquidated, and not reduced to judgment, such right still constitutes a claim under the Bankruptcy Code, and "[w]here a claim exists, so does a debt." *Energy Co-op,* 832 F.2d at 1002.

*In re Bioplasty, Inc.*, 155 B.R. 495, 498 (Bankr. D. Minn. 1993).

The "antecedent debt" issue also arose in *In re First Jersey Securities, Inc.*, a case also cited by Williams. There, the Third Circuit confronted a circumstance where prebankruptcy the debtor settled several invoices presented by its law firm for prior services. The Third Circuit concluded:

> Under the language of the statute, in order to constitute a preferential payment, First Jersey must have owed an antecedent "debt" to RSW, and that debt must have been incurred "before the transfer was made." 11 U.S.C. § 547(b)(2). The Bankruptcy Code defines a debt as a "liability on a claim." 11 U.S.C. § 101(12). In turn, the

Code defines a claim broadly. A "claim" means: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). Under this broad definition of claim, "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." Senate Report at 22, 1978 U.S. Code Cong. & Admin. News 5787, 5808. In addition, as debt is defined as a liability on a claim, it is coextensive with the definition of a claim, and both are construed broadly. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 110 S. Ct. 2126, 109 L.Ed.2d 588 (1990). It follows "when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor." *In re Energy Cooperative, Inc.*, 832 F.2d 997, 1001 (7th Cir. 1987).

*In re First Jersey Sec., Inc.*, 180 F.3d 504, 510 (3d Cir. 1999).

Baptist correctly references *In re Jones Truck Lines, Inc.* for the proposition that "[a] debt is 'antecedent' if it was incurred before the allegedly preferential transfer. A debt is incurred 'on the date upon which the debtor first becomes legally bound to pay.'" *In re Jones Truck Lines, Inc.*, 130 F.3d 323, 329 (8th Cir. 1997) (quoting *In re Iowa Premium Serv. Co.*, 695 F.2d 1109, 1111 (8th Cir. 1982) (en banc) ("*IPSCO*")). In *Jones Truck Lines*, however, the court declined resolving the antecedent debt issue as unnecessary given that a safe harbor defense was available to the transferee. The court merely noted that:

> This is a difficult issue, and there is precedent on both sides. On the one hand, *In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir. 1983), and our decision in *IPSCO*, 695 F.2d at 1112, support the district court's analysis and rest on the logical premise that a debtor first becomes liable when a resource is consumed or a service performed, not when the creditor chooses to bill the debtor. *Accord In re Cybermech, Inc.*, 13 F.3d 818, 822 (4th Cir. 1994). But in *IPSCO*, the result was to delay when bank debt was incurred, which gave the bank creditor the benefit of the "ordinary course of business" exception in § 547(c)(2). In a case such as this, on the other hand, literal application of the *IPSCO* standard accelerates the date that a continuously accruing debt is incurred. The result is that some debts will be labelled "antecedent" even though they were paid as quickly as the obligations could be calculated. For this reason, other courts have concluded that continuously accruing obligations such as rent and insurance premiums are not incurred until they are owing under the contract. *See In re White River Corp.*, 799 F.2d 631, 633 (10th Cir. 1986); *In re Advance Glove Mfg. Co.*, 761 F.2d 249, 252 (6th Cir. 1985).

*Jones Truck Lines*, 130 F.3d at 329–30.

Here, Baptist has interposed no safe harbor defense. The sole issue is whether the debt is antecedent unrelated to any uncertain predicate; Williams's unsuccessful litigation against his employer satisfied the sole predicate to his contractual liability.

This conclusion also comports with *IPSCO*, cited by Baptist for the proposition that "[c]ases interpreting § 547(c)(2) hold that a debt is incurred on the date upon which the debtor first becomes legally bound to pay, a conclusion with which we agree." *IPSCO*, 695 F.2d at 1111 (first citing *Barash v. Pub. Fin. Corp.,* 658 F.2d 504, 512 (7th Cir. 1981); then citing *In re Ken Gardner Ford Sales, Inc.*, 10 B.R. 632, 647 (Bankr. E.D. Tenn. 1981); and then citing *In re McCormick*, 5 B.R. 726, 731 (Bankr. N.D. Ohio 1980)).

*IPSCO*, however, dealt with interest payments that the debtor:

> was obligated to pay . . . only for the time it retained the use of the money that the Bank had loaned to it. The interest accrued daily, and under the terms of the agreement IPSCO became obligated to pay at the scheduled rate at the end of the month. The Bank would not have a cause of action for nonpayment of the interest until the end of the month in which IPSCO retained use of the principal.

*IPSCO*, 695 F.2d at 1111.

The *IPSCO* court concluded the debtor "had no obligation to pay interest until it used the money." *Id*.

Here, Williams's liability to Baptist became contractually conclusive when he lost his lawsuit against his employer. Baptist's assertion "that [Williams's] (vigorously contested) liability to [Baptist] was triggered only upon the entry of the Fee Award" is misplaced; Baptist prevailing in William's lawsuit triggered liability contractually and per Baptist's bylaws. The inchoate and potential contractual cause of action was neither a claim—right to payment—or debt—liability— before Williams sued his employer. The inchoate and potential contractual cause of action became both a claim and a debt when Baptist won the lawsuit Williams filed against it. The Fee Motion

and Fee Award conclusively resolved the disputed aspects of the right to payment and commensurate liability and afforded involuntary collection thereof. A dispute resolved through litigation is an everyday occurrence; the fact that collection must be pursued to judgment does not change the antecedent nature of the debt the creditor is pursuing.

### IV. Conclusion

For the reasons stated herein, the relief sought in the Motion is hereby granted, and the relief sought in the Cross-Motion is denied. The court shall enter a separate judgment granting the relief Williams seeks in his Complaint.

IT IS SO ORDERED.

Dated this this 30th day of May, 2024.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc:    Victor Williams
       Baptist Health dba Baptist Health Medical Center
       M. Randy Rice
       Allison R. Gladden
       U.S. Trustee